# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA
*EX REL.* NILES ROSEN, M.D.,

                Plaintiffs,

    v.

EXACT SCIENCES CORPORATION
AND EXACT SCIENCES
LABORATORIES, LLC,

                Defendants.

Case No. 8:19-cv-1526-T-35

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COMPLAINT
## PURSUANT TO FED. R. CIV. P. 8, 9(b), and 12(b)(6)

# TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

STATEMENT ....................................................................................... 3

    A. Exact Sciences' Development of Cologuard ........................................ 3

    B. Efforts to Encourage Compliance with Physicians' Orders for
       Cologuard ......................................................................................... 6

    C. Relator was Prescribed Cologuard Screening by a Physician ............ 7

    D. Procedural History ............................................................................ 8

STANDARD OF REVIEW ..................................................................... 8

ARGUMENT ........................................................................................ 10

  I. The FAC Fails to Establish a Predicate Violation of the AKS .............. 10

    A. The FAC Fails to Adequately Allege the Patient Compliance
       Program Induced an Order of Services in Violation of the AKS ...... 11

    B. The FAC Fails to Adequately Allege That Exact Sciences
       Knowingly and Willfully Violated the Law. ...................................... 14

    C. The FAC'S "Factual Matter" Compels the Conclusion that Exact
       Sciences had a Good Faith Belief that its Patient Compliance
       Program Complied with the Law. ...................................................... 15

    D. Compliance with the CMP's Preventative Care Safe Harbor
       Demonstrates Exact Science's Good-Faith Belief that the Patient
       Compliance Program Complied with the Law. ................................. 18

  II. The FAC Fails to Properly Allege that Exact Sciences Violated
    the FCA. ................................................................................................ 21

CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ACT for Health v. United Energy Workers Healthcare Corp.*,
  2018 WL 2090819 (W.D. Ky. May 4, 2018), *aff'd*, 784 F.
  App'x 295 (6th Cir. 2019).............................................................. 12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................... 8, 9, 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................... 8, 9, 15

*Corsello v. Lincare, Inc.*,
  428 F.3d 1008 (11th Cir. 2005)........................................... 9, 10

*Hopper v. Solvay Pharmaceuticals, Inc.*,
  588 F.3d 1318 (11th Cir. 2009)...............................................9

*Klaczak v. Consolidated Medical Transport*,
  458 F. Supp. 2d 622 (N.D. Ill. 2006) ................................. 15, 16

*Payne v. Sanon*,
  2021 WL 307370 (M.D. Fla. Jan. 29, 2021) ........................... 21

*SFM Holdings, Ltd. v. Banc of America Securities, LLC*,
  600 F.3d 1334 (11th Cir. 2010).................................................3

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*,
  290 F.3d 1301 (11th Cir. 2002)........................................... 9, 10

*United States ex rel. Heller v. Guardian Pharmacy, LLC*,
  2021 WL 488305 (N.D. Ga. Feb. 10, 2021) ............................ 22

*United States ex rel. Osheroff v. Tenet Healthcare Corp.*,
  2012 WL 2871264 (S.D. Fla. July 12, 2012) .......................... 11

*United States ex rel. Phalp v. Lincare Holdings, Inc.*,
  857 F.3d 1148 (11th Cir. 2017)....................................... 21, 22

*United States ex rel. Suarez v. Abbie Inc.*,
  2019 WL 4749967 (N.D. Ill. Sept. 30, 2019) .................... 17, 23

*United States v. Baycare Health System*,
2015 WL 4878456 (M.D. Fla. Aug. 14, 2015) ........................................ 11

*United States v. Borrasi*,
639 F.3d 774 (7th Cir. 2011)................................................................... 13

*United States v. Hill*,
745 F. App'x 806 (11th Cir. 2018) ......................................................... 14

*United States v. King-Vassel*,
728 F.3d 707 (7th Cir. 2013)............................................................ 22, 23

*United States v. Novartis AG*,
2011 WL 13234720 (E.D.N.Y. Feb. 8, 2011) ........................................ 17

*United States v. Patel*,
17 F. Supp. 3d 814 (N.D. Ill. 2014), *aff'd*, 778 F.3d 607 (7th
Cir. 2015) ............................................................................................... 16

*United States v. Patel*,
778 F.3d 607 (7th Cir. 2015)................................................................... 13

*United States v. Ruan*,
966 F.3d 1101 (11th Cir. 2020), *cert. docketed*, No. 20-1410
(U.S. Apr. 7, 2021)................................................................................. 16

*United States v. Starks*,
157 F.3d 833 (11th Cir. 1998)........................................................... 14, 16

*United States v. Taneja*,
2021 WL 3518206 (M.D. Fla. Aug. 4, 2021) ......................................... 15

*United States v. Vernon*,
723 F.3d 1234 (11th Cir. 2013).................................................... 10, 14, 16

*Universal Health Services, Inc. v. United States*,
136 S. Ct. 1989 (2016)........................................................................... 22

*Urquilla-Diaz v. United States*,
780 F.3d 1039 (11th Cir. 2015)........................................................ 22, 23

iii

## STATUTES, RULES, AND REGULATIONS

42 C.F.R.
    § 1003.110................................................................................... 5, 19
    § 1003.110(4) ...................................................................................... 20

65 Fed. Reg. 24,400 (Apr. 26, 2000) ................................................ 21

81 Fed. Reg. 88,368 (Dec. 7, 2016) .................................................. 20

31 U.S.C.
    § 3729(a)(1)(A) ................................................................................... 21
    § 3729(a)(1)(B) ................................................................................... 21
    § 3729(a)(1)(G) ............................................................................. 21, 22
    § 3729(b) ....................................................................................... 22, 24

42 U.S.C.
    § 1320a-7a(i)(6)(D) .......................................................................... 5, 19
    § 1320a-7a(a)(5) ............................................................................... 5, 19
    § 1320a-7b(b)(2)(B) ............................................................................ 10

Fed. R. Civ. P. 8(a)(2) ......................................................................... 8

**INTRODUCTION**

Relator Niles Rosen ("Relator") commenced this *qui tam* action in June 2019 alleging that Defendants Exact Sciences Corporation and Exact Sciences Laboratories, LLC (collectively "Exact Sciences") violated the Anti-Kickback Statute ("AKS") and the False Claims Act ("FCA"). Relator's claims are predicated on a theory that Exact Sciences violated the AKS, and thereby the FCA, by offering and sending Relator a Visa gift card upon completion of a colorectal screening test that had already been ordered by his physician. The Visa gift card was part of the program (the "Patient Compliance Program") developed by Exact Sciences to incentivize patients to follow through on their own providers' orders and complete colorectal cancer screening tests. After reviewing the Relator's claims, the United States declined to intervene in March 2021, yet Relator nonetheless filed the First Amended Complaint (the "FAC"), reasserting the same theories of liability. Despite the Relator's second attempt, the FAC fails to state a claim on which relief can be granted and must be dismissed.

First, Relator's claim fails because the FAC's allegations do not satisfy the AKS's "inducement" requirement. To meet this requirement, the FAC must allege that any remuneration led to orders of medical services paid by a federal health care program. But the FAC concedes that Relator's physician had already ordered Exact Sciences' colorectal screening test long before

Relator had any contact with Exact Sciences through its Patient Compliance Program. It was only *after* Relator failed to comply with his own physician's order that Exact Sciences incentivized compliance through the Patient Compliance Program. Encouraging a patient to follow through with a previously ordered medical service does not constitute inducement under the AKS.

In addition, Relator's claims for violation of the AKS also fail because there are no allegations in the FAC that satisfy the statute's intent requirement. To violate the AKS, a person must have acted "knowingly and willfully" in violation of the law. Here, Relator does not and cannot allege that Exact Sciences ever knowingly or willfully violated the law by implementing its Patient Compliance Program. To the contrary, the FAC demonstrates that Exact Sciences acted with the good-faith belief that the Patient Compliance Program fully complied with the law. Exact Sciences' good faith belief is further supported by the fact that its Patient Compliance Program falls squarely within the preventive care safe harbor to the Civil Monetary Penalties Statute ("CMP"), which specifically allows for incentives to be paid to federal health care beneficiaries, like Relator, for preventive care.

Lastly, because the FCA claims are all predicated on a violation of the AKS, the FAC's failure to state a claim under the AKS necessarily results in a failure to state its FCA claims as well.

Accordingly, this Court should dismiss the FAC for failure to state a claim on which relief can be granted.

## STATEMENT

### A.    Exact Sciences' Development of Cologuard

Colon cancer is the second leading cause of cancer-related death, with more than 50,000 Americans dying of colorectal cancer every year. *See* FAC, Ex. 1 ("Reminder Letter"), ECF No. 23-1. Because the rate of provider and patient adherence to the screening guidelines for colon cancer is low, almost two-thirds of colorectal cancer cases are diagnosed after the disease has progressed to later stages of the disease, which have lower survival rates. Exact Scis. Corp., Annual Report (Form 10-K) at 4 (Feb. 21, 2019) ("2018 10-K").[1] In contrast, 90% of colon cancer cases found by early detection are curable. *See* Reminder Letter at 2. Put simply, "colorectal cancer is among the most preventable, yet least prevented cancers." 2018 10-K at 4. To help encourage early detection, Exact Sciences developed Cologuard, a non-invasive

---

[1] Relator's FAC references Exact Science's 2018 10-K filing several times, but failed to attach it as an exhibit. FAC ¶¶ 38, 53, 58, ECF No. 23. The FAC's reference to this document is sufficient for the entire 2018 10-K filing to be incorporated into the FAC. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010) (explaining that a court may consider an extrinsic document on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

colorectal cancer screening test completed by the patient at home. *See* Reminder Letter at 1.

Cologuard was approved by the Food and Drug Administration ("FDA") in August 2014. FAC ¶ 36. Two months later, the Centers for Medicare and Medicaid Services ("CMS") determined that Medicare would cover triennial Cologuard screenings of asymptomatic patients 50 to 85 years old and at average risk for developing colorectal cancer. FAC ¶ 36. Cologuard is the only FDA-approved stool-based DNA ("sDNA") non-invasive colorectal cancer screening test. 2018 10-K at 4. In October 2014, CMS issued a National Coverage Determination "for Cologuard following a parallel review process with the FDA." 2018 10-K at 6. "Cologuard was the first screening test approved by the FDA and covered by CMS through" that process. 2018 10-K at 6.

In June 2016, the U.S. Preventive Services Task Force ("USPSTF") issued its final recommendation listing sDNA tests for colorectal cancer as a recommended preventive care service and specifically identified Cologuard as the only multitargeted fecal DNA screening offered in the United States. *See* US Preventive Service Task Force, Screening for Colorectal Cancer: US Preventive Services Task Force Recommendation Statement (June 21, 2016) ("USPTF Recommendation"), Exact Sciences Corporation and Exact Sciences Laboratories, LLC's Motion for Judicial Notices ("MJN") Ex. 1 at 2571.

Designation by USPTF as a recommended preventive care service is a requirement for an incentive program to qualify under the preventive care safe harbor to the CMP, which specifically allows for incentives to be paid to federal health care beneficiaries for preventive care.[2]   *See* 42 C.F.R. § 1003.110 ("Preventive care, for purposes of the definition of the term Remuneration as set forth in this section and the preventive care exception to section 231(h) of HIPAA, means any service that … is a specific clinical service described in the current [USPTF's] Guide to Clinical Preventive Services.").

Cologuard is only available by prescription.  2018 10-K at 10; *see* FAC ¶ 40.  After receiving a prescription for Cologuard, Exact Sciences sends a Cologuard sample collection kit to the patient's home.  FAC ¶ 41.  The Cologuard sample collection kits include instructions to the patient on how to collect a stool sample and return the sample to Exact Sciences for analysis.  FAC ¶ 43.  After it receives the stool sample and completes the analysis, Exact Sciences transmits the test results to the patient or provider who ordered the

_____

[2] The CMP's beneficiary inducement provision prohibits remuneration paid "to any individual eligible for benefits under [Medicare] or under [Medicaid] that such person knows or should know is likely to influence such individual to order or receive from a particular provider, practitioner, or supplier any item or service for which payment may be made, in whole or in part, under [Medicare or Medicaid]." 42 U.S.C. § 1320a-7a(a)(5).  The CMP includes a safe harbor which exempts from the definition of "remuneration" any "incentives given to individuals to promote the delivery of preventive care as determined by [HHS]," 42 U.S.C. § 1320a-7a(i)(6)(D).

colorectal screening test.   FAC ¶ 46.   Exact Sciences submits claims to Medicare after sending the results of the test.   FAC ¶ 47.

**B.    Efforts to Encourage Compliance with Physicians' Orders for Cologuard**

Notwithstanding the life-saving potential of Cologuard, Exact Sciences found that not all patients completed their Cologuard tests and developed a compliance program to encourage patients to follow through on their providers' orders.[3]   2018 10-K at 5, 17.   This Patient Compliance Program included letters, text messages, emails, phone calls, and incentives, including gift cards. 2018 10-K at 5, 17.   For example, Exact Sciences promoted patient compliance with provider orders by sending reminders to patients with outstanding Cologuard screening kits.   *See* Reminder Letter at 1.   Along with the reminder, Exact Sciences offered a Visa gift card to patients who successfully returned their Cologuard sample collection kits.   FAC ¶ 42; Reminder Letter at 1.

Exact Sciences placed several restrictions on the gift cards it offered.   *See* FAC, Ex. 2 ("Gift Card Cover Letter").   First, the Visa gift cards sent by Exact Sciences did not permit cash or ATM access and expired after approximately one year.   *See* Gift Card Cover Letter.   Also, the Visa gift cards were only

---

[3] Low patient compliance has been consistently recognized as a problem for colorectal cancer screen efforts, including in the non-invasive screening space.  According to one published study, "only three out of every 1,000 patients studied adhered to fecal test screening guidelines during a continuous 10-year observation period."  2018 10-K at 9.

6

redeemable at select vendors who had contracts with Visa.  *See* Gift Card Cover Letter.  Exact Sciences did not offer the Visa gift card until a provider had already determined that screening was necessary and prescribed Cologuard as the most appropriate screening test.  *See* FAC ¶¶ 39-42.

## C.  Relator was Prescribed Cologuard Screening by a Physician

Relator is a 72-year-old Medicare beneficiary whose gastroenterologist determined he should be screened for colon cancer.  *See* FAC ¶¶ 11, 39.  In November 2017, Relator's gastroenterologist prescribed Cologuard for Relator.  FAC ¶ 40.  However, after receiving his Cologuard collection kit at home, Relator did not return his kit in accordance with his physician's order.  FAC ¶ 41.

In February 2018, Exact Sciences sent Relator a letter reminding him to complete the Cologuard screening test as prescribed by his physician.  FAC ¶ 42.  Along with the reminder, Exact Sciences offered Relator a $75 dollar Visa gift card to encourage Relator to complete the Cologuard screening test and return the sample collection kit to Exact Sciences.  FAC ¶ 42; *see also* Reminder Letter.  Relator returned the Cologuard kit containing his stool sample and Relator received the results of his test from Exact Sciences.  FAC ¶¶ 43, 46.

Relator also accepted the $75 Visa gift card that Exact Sciences offered to encourage compliance with his physician's order.  FAC ¶44.

### D.   Procedural History

Relator filed his original complaint under seal on June 24, 2019.  ECF No. 1.  Nearly two years later, after investigating the matter, the United States declined to intervene in the action.  ECF No. 22.  Nonetheless, Relator pressed forward in this qui tam action by filing the FAC on April 12, 2021, alleging that:  (i) Exact Sciences submitted false claims to Medicare and other healthcare programs for payment on Cologuard screening tests (FAC ¶¶ 68-73); (ii) Exact Sciences made a false record or statement material to a false or fraudulent claim by certifying compliance with the AKS (*id.*  ¶¶ 74-78); and (iii) Exact Sciences failed to report and return over payments to Medicare and other healthcare programs (*id.*  ¶¶ 79-84).

### STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient.  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not enough; instead, a complaint must contain sufficient factual matter, which,

if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, this Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

In addition to satisfying the general pleading requirements articulated in *Twombly* and *Iqbal*, claims brought under the FCA must meet the heightened pleading standard set forth in Rule 9(b), *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002), which requires that allegations of fraud set forth "facts as to time, place, and substance of the defendant's alleged fraud." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (citation and internal quotation marks omitted). Most important, for a FCA complaint to satisfy Rule 9(b), it "must contain some indicia of reliability." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (quoting *Clausen,* 290 F. 3d at 1311). The failure to satisfy Rule 9(b)'s pleading requirements amounts to a failure to state a

claim under Rule 12(b)(6) and requires dismissal of the complaint.  *See, e.g.,*

*Corsello,* 428 F.3d at 1012.[4]

**ARGUMENT**

## I.     The FAC Fails to Establish a Predicate Violation of the AKS.

Relator's entire theory of FCA liability is predicated on Exact Sciences'

purported violation of the AKS, FAC ¶¶ 48-65, which prohibits offering or

paying remuneration to induce a person "to purchase, lease, order, or arrange

for or recommend purchasing, leasing, or ordering any good, facility, service,

or item for which payment may be made in whole or in part under a Federal

health care program."  42 U.S.C. § 1320a-7b(b)(2)(B).  Therefore, to survive this

motion, Relator must adequately plead the elements of liability under the AKS:

that Exact Sciences (1) knowingly and willfully; (2) paid something of value;

(3) to induce the purchase or ordering of services; (4) paid for by a Federal

health care program.  *See United States v. Vernon*, 723 F.3d 1234, 1252 (11th

Cir. 2013).

---

[4] Unlike many cases brought under the AKS, Relator is a Medicare beneficiary—not an insider or corporate outsider with knowledge, insight, or involvement in Exact Science's Patient Compliance Program.  *See Clausen,* 290 F.3d at 1314 (noting that outsiders receive no "special leniency" under either the Federal Rules or the AKS to justify failing to allege with the required specificity the circumstances of the fraudulent conduct).

10

A.      **The FAC Fails to Adequately Allege the Patient Compliance Program Induced an Order of Services in Violation of the AKS.**

The FAC fails to adequately allege inducement because it contains no allegations about how the Patient Compliance Program influenced the actions of Relator's physician, who ordered the Cologuard test.

The AKS prohibits the payment of remuneration "to induce such person" to "purchase, lease, order, or arrange" a medical service paid by a federal health care program.  Though the AKS does not define "inducement," its plain meaning is "to influence an act or course of conduct."  *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264 at *8 (S.D. Fla. July 12, 2012) (citation omitted).  This requisite element of the AKS, "functions as a nexus to ensure Relator includes allegations that the use of remuneration influences the direction of referrals."  *Id.*

To constitute inducement, Relator must demonstrate "an intent to exercise influence over the reason or judgment of another in an effort to cause the referral of program related business."  *Id.* (dismissing AKS claims due to absence of any alleged remuneration clouding the independent judgment of a physician); *see also United States v. Baycare Health Sys.*, 2015 WL 4878456, at *6 (M.D. Fla. Aug. 14, 2015) ("Although the [AKS] fails to define the term 'induce,' '[c]ase law ... consistently treats the [AKS's] inducement element as an intent requirement.'").

11

The FAC contains no factual allegations that the Patient Compliance Program clouded the independent judgment of the physician who determined the Relator should be screened for colorectal cancer, affected the physician's intent with regard to the selection of the Cologuard test, or influenced the physician to prescribe Cologuard to Relator.  Instead, the FAC is clear that Relator's physician determined that Relator needed to be screened for colorectal cancer and decided that Cologuard was the appropriate test without any involvement of Exact Sciences.  FAC ¶¶ 39-41.  In fact, the FAC concedes that Relator did not even become aware of the Patient Compliance Program until weeks after Cologuard was selected and prescribed by Relator's physician.  FAC ¶ 42.

Instead, Relator's allegations of inducement rest on the faulty premise that *he* was somehow induced by the existence of the Patient Compliance Program.  FAC ¶ 23.  But courts have rejected a theory of AKS liability predicated on inducing a patient's actions.[5]  For example, in *ACT for Health v. United Energy Workers Healthcare Corp.*, 2018 WL 2090819, at *13 (W.D. Ky. May 4, 2018), *aff'd*, 784 F. App'x 295 (6th Cir. 2019), the court rejected

---

[5] Instead, as set forth *infra*, it is the CMP that directly applies to incentives paid to patients.  Here, the Patient Compliance Program fell squarely within the CMP's Preventive Care Exception that allowed for incentives to be paid to federal health care beneficiaries.  Relator simply ignores that directly applicable statute and instead tries to extend the boundaries of AKS to conduct even its broad scope plainly does not reach.

allegations that defendants, who provided home-health care services, violated the AKS by offering a competitor's patients incentives to switch and use their services instead.  In dismissing the AKS allegation, the court explained that the AKS did not apply to the solicitation of a competitor's patients, but instead the statute "prohibits situations in which health care providers give or receive kickbacks in exchange for referring patients to other providers who may provide services that are reimbursable by a federal program such as Medicare or Medicaid." *Id.* at *14.

A theory of AKS liability based on inducing a patient to follow through with a doctor's existing order is also inconsistent with the purposes of the AKS. The AKS is designed to prevent fraud and "protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care or necessity of services." *United States v. Patel*, 778 F.3d 607, 612 (7th Cir. 2015) (citation omitted); *see United States v. Borrasi,* 639 F.3d 774, 781 (7th Cir. 2011) (noting that AKS was intended to combat health care fraud).  Put simply, promoting a patient's compliance with a physician's order is not the type of behavior targeted by the AKS.

The AKS's focus on the inducement of providers as opposed to patients makes perfect sense in the context of Cologuard.  Cologuard is an innovative, life-saving test for a cancer that is highly treatable if caught early, but because

13

many screenings are unpleasant and require hospital visits, patients are not always as vigilant as they ought to be.  As a result, colon cancers are caught later, when they are more likely to be fatal and, at a minimum, cost Medicare more to treat.  Cologuard provides a less invasive but still effective tool to diagnose colon cancers.  The AKS was not designed to penalize companies for developing incentive programs, like the Patient Compliance Program, that do not influence provider behavior but instead encourage patients to protect their health and comply with orders already place by their providers.  The Patient Compliance Program does not increase the total number of Cologuard kits prescribed, nor does it pose a risk of abuse, addiction, or fraud on Medicare – the dangers for which the AKS was designed to prevent.  The Court should therefore reject the FAC's AKS theory of inducement.

## B.   The FAC Fails to Adequately Allege That Exact Sciences Knowingly and Willfully Violated the Law.

Liability under the AKS ensues only when the violation "was committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law." *Vernon*, 723 F.3d at 1256 (quoting *United States v. Starks*, 157 F.3d 833, 837-38 (11th Cir. 1998)); *see also United States v. Hill,* 745 F. App'x 806, 815 (11th Cir. 2018) (defendant acted knowingly and willfully by signing documents

14

acknowledging the illegality of kickbacks and acting furtively indicating criminal intent).

Relator baldly asserts in the FAC that Exact Sciences acted "with knowledge that their conduct was unlawful" and that they "knew that offering cash equivalent inducements, such as the Visa reward cards, to government beneficiaries to cause them to undergo Cologuard testing was unlawful and that submitting claims to Medicare for that testing, knowing those claims were ineligible for payment, was also unlawful." FAC at 16; *id* ¶ 60. These allegations—nothing more than "naked assertions" without any "further factual enhancement"—are exactly the type of insufficient pleading that the Supreme Court rejected in *Twombly* and *Iqbal* and cannot support a claim that Exact Sciences voluntarily acted with the specific intent to do something unlawful. *See Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 570). Accordingly, the FAC should be dismissed on this ground alone.

### C. The FAC'S "Factual Matter" Compels the Conclusion that Exact Sciences had a Good Faith Belief that its Patient Compliance Program Complied with the Law.

The FAC contains no direct allegations that demonstrate Exact Sciences acted willfully, that is, with knowledge that their conduct was unlawful. While circumstantial allegations can be sufficient to establish "willfulness" under the AKS, *see United States v. Taneja*, 2021 WL 3518206 at *2 (M.D. Fla. Aug. 4, 2021); *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 676 (N.D. Ill.

15

2006), these allegations must support an inference that a defendant intended to act in an unlawful manner. *See Vernon*, 723 F.3d at 1256; *see also United States v. Patel,* 17 F. Supp. 3d 814, 824 (N.D. Ill. 2014), *aff'd*, 778 F.3d 607 (7th Cir. 2015). A relator's allegations must be "robust," and should describe, "several actions inconsistent with a good-faith belief that [the defendant's] conduct was legal." *Klaczak*, 458 F. Supp. 2d at 676 (analyzing a motion for summary judgment on an FCA claim predicated on an AKS violation). "Put somewhat differently, the [allegations] in such instances tend[] to meaningfully exclude a legitimate (or negligent) explanation for the defendants' conduct—consistent with the heightened scienter requirement imposed by a 'knowing and willfully' standard." *Id.* at 676-77.

In cases where courts have concluded that defendants accused of violating the AKS acted willfully, the circumstantial evidence often involves active concealment of the illegal conduct, supporting an inference that the defendant knew his actions were wrongful. *See United States v. Starks*, 157 F.3d 833, 836-37 (11th Cir. 1998) (concealing kickback payments by demanding to receive them in restaurant parking lots); *United States v. Ruan,* 966 F.3d 1101, 1146 (11th Cir. 2020) (explaining that directing the donation of kickback payments to a university shows consciousness of guilt), *cert. docketed*, No. 20-1410 (U.S. Apr. 7, 2021).

Courts have applied the same analysis in FCA cases predicated on AKS violations. In *United States ex rel. Suarez v. AbbVie Inc.*, the court dismissed a relator's complaint for failure to meet the AKS's scienter requirement, given the absence of allegations showing any concealment. 2019 WL 4749967 at *1 (N.D. Ill. Sept. 30, 2019). In that case, the relator alleged that AbbVie's "Ambassador Program" which employed registered nurses as in-home advisors to monitor patients' use of the company's prescription drug and assist with payment, violated the AKS. *Id.* at *2. In dismissing the complaint, the court underscored that relator was required "to allege facts supporting an inference that defendant intended to act in a way it knew was wrongful" to meet the requisite "willful" requirement of the AKS. *Id.* at *13. The court found that relator failed to meet that burden, and that AbbVie's website—openly disclosing AbbVie's Ambassador Program—rebutted any inference that AbbVie intended to engage in unlawful conduct. *Id.* "In these circumstances, the court cannot infer from Relator's allegations that AbbVie acted 'knowingly and willfully.'" *Id.* at 14.

Similarly, in *United States v. Novartis AG*, 2011 WL 13234720, at *9 (E.D.N.Y. Feb. 8, 2011), the court dismissed FCA claims on the grounds that relator had "failed to even suggest" that Novartis acted "with the intent to do something that the law forbids" because Novartis provided services and compensation to physicians "quite openly." The court concluded that the

17

relator did not "allege any facts, circumstantial or otherwise, that Novartis believed, or acted in a way that suggested it believed, that its marketing of [its drugs] was illegal." *Id.*

Like *AbbVie* and *Novartis,* the allegations in the FAC are wholly incompatible with an inference that Exact Sciences believed, or acted in a way that suggested it believed, that the Patient Compliance Program was unlawful. As the FAC sets forth, Exact Sciences sent Relator the Reminder Letter fully and clearly explaining the terms of the Patient Compliance Program, sent a similar letter to many other federal health care beneficiaries, and publicly discussed the Patient Compliance Program in the company's public filings. FAC ¶¶ 38, 54, 68-84; *see also* 2018 10-K at 5, 17; Exact Scis. Corp., Annual Report (Form 10-K) at 5 (Feb. 21, 2020), MJN Ex. 2. The FAC's allegations that Exact Sciences operated the Patient Compliance Program transparently and openly compel a finding that Exact Sciences had a good-faith belief that its Patient Compliance Program fully complied with the law. Accordingly, the FAC cannot establish that Exact Sciences acted willfully, and therefore, fails to state a violation of the AKS.

> **D.    Compliance with the CMP's Preventative Care Safe Harbor Demonstrates Exact Science's Good-Faith Belief that the Patient Compliance Program Complied with the Law.**

Although the FAC identifies safe harbors that Relator alleges do not apply to the Patient Compliance Program, FAC ¶¶ 28-32, Relator overlooks one that does: the CMP's safe harbor for preventive care services. The CMP governs payments made directly to federal health care beneficiaries like Relator and prohibits remuneration "that [a] person knows or should know is likely to influence such [federal health care beneficiary] to order or receive from a particular provider, practitioner, or supplier any item or service for which payment may be made, in whole or in part, under [Medicare or Medicaid]." 42 U.S.C. § 1320a-7a(a)(5). But Congress established a safe harbor to the statute's general prohibition on payments to beneficiaries, permitting "incentives given to individuals to promote the delivery of preventive care as determined by [the Department of Health and Human Services]." *Id*. § 1320a-7a(i)(6)(D).

Congress added the preventive care exception to the CMP in 1996. *See* 42 U.S.C. § 1320a-7a(i)(6)(D). The implementing regulations adopted by the Department of Health and Human Services ("HHS") define "preventive care" as any service that "(1) is a specific clinical service described in the current U.S. Preventive Services Task Force's Guide to Clinical Preventive Services, and (2) [i]s reimbursable in whole or in part by Medicare or [Medicaid]." 42 C.F.R. § 1003.110. Since June 2016, when USPTF identified Cologuard as a

19

clinical preventive care service, Exact Science's Cologuard test has met HHS's definition for preventive care.

Furthermore, Exact Science's Patient Compliance Program meets the criteria for permissible incentive programs set forth in HHS's preventive care safe harbor regulations.  First, the Patient Compliance Program is "not tied (directly or indirectly) to the provision of other services reimbursed in whole or in part by Medicare or [Medicaid]" because the Cologuard test is a discrete medical service that is not tied to the provision of any other services.  42 C.F.R. § 1003.110(4).  Second, the $75 Visa gift cards offered as part of the Patient Compliance Program are not "disproportionally large in relationship to the value of the preventive care service (i.e., either the value of the service itself or the future health care costs reasonably expected to be avoided as a result of the preventive care)," given the cost of colon cancer treatment and the approximately $500 cost of the Cologuard test.   FAC ¶ 56; 42 C.F.R. § 1003.110(4).   Finally, the Visa gift cards are not "[c]ash or instruments convertible to cash." 42 C.F.R. § 1003.110(4). [6]  As explained in the letter that

---

[6] The phrase "instruments convertible to cash" has been defined in HHS regulations as a check.  *See* 81 Fed. Reg. 88,368, 88,393 n.19 (Dec. 7, 2016).  In the context of the preventive care safe harbor, HHS has stated, "we are excluding from the scope of permissible exceptions cash payments and instruments convertible to cash.  Thus, for example, it would not be permissible

accompanied Relator's Visa gift card, the cards did not permit cash or ATM access and could only be used to make purchases at certain vendors.  *See* Gift Card Cover Letter.

That the Patient Compliance Program falls squarely within the CMP's preventive care safe harbor further undercuts the FAC's unsupported allegation that Exact Sciences acted with intent to violate the law.  Indeed, compliance with a well-known statutory provision and its implementing regulations are antithetical to an allegation of willfulness.  Accordingly, the FAC should be dismissed on this ground as well.

## II.   The FAC Fails to Properly Allege that Exact Sciences Violated the FCA.

Relator alleges violations of three separate, but similar, sections of the FCA, 31 U.S.C. § 3729(a)(1)(A), § 3729(a)(1)(B), and § 3729(a)(1)(G).  FAC ¶¶68-84.  Although each subsection of the FCA requires that a relator satisfy different elements, each requires that the Defendant act with scienter.[7]

---

to provide an incentive in the form of a check."  65 Fed. Reg. 24,400, 24,409 (Apr. 26, 2000).

[7] To establish a "claim under 31 U.S.C. § 3729(a)(1)(A), "a relator must prove three elements: (1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false."  *Payne v. Sanon,* 2021 WL 307370 at *4 (M.D. Fla. Jan. 29, 2021) (quoting *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017)).  To establish a "claim under § 3729(a)(1)(B), "[a] relator must show that: (1) the defendant made (or caused to be made) a

21

The FCA's scienter requirement is "actually quite nuanced." *Urquilla-Diaz v. United States*, 780 F.3d 1039, 1058 (11th Cir. 2015) (quoting *United States v. King-Vassel*, 728 F.3d 707, 712 (7th Cir. 2013)). To satisfy the FCA's scienter requirement, a Relator must plead that "the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1994 (2016). "Knowingly," in the context of the FCA, can mean either "actual knowledge," "deliberate ignorance," or "reckless disregard." 31 U.S.C. § 3729(b). Congress's intent in imposing liability under the FCA for "reckless disregard," the lowest level of scienter that is sufficient was "to ensure that 'knowingly' captured the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted." *Urquilla-Diaz*, 780 F.3d at 1058. "Although proof of a 'specific intent to defraud' is not

---

false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *Id.* (quoting *Phalp*, 857 F.3d at 1154). To establish a claim under § 3729(a)(1)(G), a relator must establish, that the defendant "[1] knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or [2] knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *United States ex rel. Heller v. Guardian Pharmacy, LLC*, 2021 WL 488305, at *4 (N.D. Ga. Feb. 10, 2021) (quoting 31 U.S.C. § 3729(a)(1)(G)).

required, the statute's language makes plain that liability does not attach to innocent mistakes or simple negligence." *Id.* at 1058 (quoting *King-Vassel*, 728 F.3d at 712).

Because it fails to adequately plead a violation of the AKS, the FAC also fails to plead that Exact Sciences acted knowingly under the FCA when it submitted a claim for payment to Medicare for Relator's Cologuard test. As discussed *supra*, with respect to the AKS, the FAC fails to allege that the Patient Compliance Program induced the purchase or ordering of services paid for by Medicare or that Exact Sciences acted knowingly and willfully in operating the Program. Indeed, because the FAC cannot establish a violation of the AKS, it correspondingly fails to establish a violation of the FCA. *See United States ex rel. Suarez v. Abbie Inc.,* 2019 WL 4749967, at *14 (N.D. Ill. Sept. 30, 2019) ("Because Relator's FCA claims depend entirely on the assertion that AbbVie violated the AKS – and because Relator has failed to state a claim for an AKS violation – the court need not address whether Relator's complaint sufficiently pleads scienter under the FCA."). But even if this Court were to reach the FCA scienter issue, the FAC fails to properly allege that Exact Sciences acted with actual knowledge of any false claims, statements, or records, or even that the company operated with deliberate indifference or reckless disregard to such falsehoods because, as discussed *supra*, Exact Sciences openly disclosed its Patient Compliance Program in

public filings and communications to patients, negating any inference that it acted with "reckless disregard," let alone "actual knowledge" or "deliberate indifference."  31 U.S.C. § 3729(b).

**CONCLUSION**

For the foregoing reasons, Exact Sciences respectfully requests that the Court dismiss the FAC with prejudice

Respectfully submitted,

*/s/ George P. Varghese*
(lead counsel)

| | |
|---|---|
| HOMER BONNER | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Peter Homer<br>Florida Bar No: 291250<br>1200 Four Seasons Tower 1441<br>Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 350-5139<br>Facsimile: (305) 982-0063<br>phomer@homerbonner.com | George P. Varghese (*pro hac vice*)<br>Katherine V. Mackey (*pro hac vice*)<br>60 State Street<br>Boston, MA 02109 USA<br>Telephone: (617) 526-6993<br>Facsimile: (617) 526-5000<br>george.varghese@wilmerhale.com<br>katherine.mackey@wilmerhale.com |
| *Attorneys for Defendants*<br>*Exact Sciences* | Thomas L. Strickland (*pro hac vice* pending)<br>1899 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Telephone: (202) 663 6925<br>Facsimile: (202) 663-6363<br>thomas.strickland@wilmerhale.com |
| | *Attorneys for Defendants*<br>*Exact Sciences* |

## DEFENDANTS' DESIGNATION OF LEAD COUNSEL

Pursuant to Local Rule 2.02(a), Defendants Exact Sciences Corporation and Exact Sciences Laboratories, LLC designate George P. Varghese of Wilmer Cutler Pickering Hale and Dorr LLP as their lead counsel in this action.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for the Defendants conferred with counsel for Relator regarding the relief sought herein.  The parties were unable to agree on the resolution of all or part of this Motion.  Specifically, on date 20, 2021, counsel for Defendants spoke with counsel for Relator by phone, explained the grounds for the motion to dismiss, and inquired whether Relator would dismiss the FAC on these grounds.  Counsel for Relator did not consent to dismissal of the FAC.

*/s/ Peter Homer*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2021, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

*/s/ Peter Homer*